# Bucher *versus* Ream.

68    421
214    ¹199

1. A husband having failed, he with his wife, who had no separate estate, occupied a farm rented, as was alleged, by the wife, who labored upon it, raised and sold stock, produce, &c.   The property was the husband's as between him and his creditors.

2. A wife is entitled to the avails of her separate property though the labor of the husband mingles in the production.

3. Property purchased by the wife on the credit of her separate estate or by her earnings derived from the management of it, is her own.

4. Where a wife has no separate estate, she can acquire no property with her earnings during coverture.

5. Her earnings belong to her husband, and if she purchases with borrowed money or on credit, the property belongs to her husband.

6. Brown *v.* Pendleton, 10 P. F. Smith 419; Hallowell *v.* Horter, 11 Casey 375; Rush *v.* Vought, 5 P. F. Smith 437, recognised.

May 3d 1872.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lancaster county:* No. 48, to May Term 1871.

This was an issue under the Sheriff's Interpleader Act, framed September 1st 1869, between Polly Bucher, plaintiff and claimant, and Cyrus Ream, assignee of Jacob Bucher, defendant, to try the ownership of certain goods levied on by the defendant, under his execution, on a judgment for $353.64, issued to August Term 1869, against Jesse Bucher, husband of Polly Bucher.

[Bucher *v.* Ream.]

The goods were " two horses, five cows, six head of young cattle, five hogs, one two-horse wagon, one one-horse wagon, spring wagon, hay-ladders, horse-rake, top buggy, plough, one spike and shovel harrow, wheelbarrow, buggy harness, gears for two horses, interest in 20 acres of wheat in the ground, ditto in 12 acres of oats in the ground, ditto in 12 tons of hay, ditto in one acre of rye, about half an acre of potatoes, household and kitchen furniture."

The plaintiff was married to Jesse Bucher in 1851, and after her marriage she received from her grandfather's estate about $1400. According to her own and her husband's testimony her husband was keeping tavern in April 1860, when he made an assignment of all their property, real and personal, for the benefit of creditors, she joining in the deed. All the property was sold except the household furniture, which she claimed and it was allowed to remain with her. His brother Jacob bought some articles at the assignee's sale, which were allowed to remain with them. They continued to occupy the tavern as before, the license being in the husband's name. They remained there some years, and went to the farm of Mr. Lohra, the agreement for renting of which was with the husband. In 1865 they went to the farm of her uncle, Samuel Weinhold, who allowed them to have it out of regard for her at the interest of the money the farm cost him. In 1869 they went to Mr. Geisenberger's farm, the husband having entered into and signed a written lease for that: in both instances the agreements were made on behalf of the wife. From about the time of their assignment the husband had been in feeble health and without any property. She managed the farms with much energy and industry, she and her daughters working on the farm; he worked occasionally. He bought and exchanged the live-stock, utensils, &c., under her direction, the money for the purchases being obtained from the produce of the farm, including butter, eggs, poultry, &c. All the dealing with the latter class of produce was done by herself. She paid the taxes also from the same sources. The goods in dispute were levied on upon the Geisenberger farm where they were living at the time.

The defendants offered in evidence the record of an action of replevin by Jacob Bucher against Jesse Bucher, in 1862, for the goods he had bought at the assignee's sale and allowed to remain with Jesse, in which a claim property bond was given by Jesse and the goods retained. Also the auditor's report on the distribution of the assigned estate, in which the plaintiff, Polly Bucher, claimed to have part of the estate as her own property, but in which she failed in consequence of having joined in the assignment. Also, petitions of Jesse for tavern license for 1861–1862 –1863.

[Bucher *v.* Ream.]

These offers were all objected to by the plaintiff, admitted and several bills of exception sealed.

He gave in evidence the lease between Geisenberger and Jesse, dated October 24th 1867, for a farm of 88 acres; Jesse "yielding and paying" to Geisenberger "the yearly rent as follows: one-half of all the winter grain, and one-half of all the summer grain, raised and growing on the premises; the said grain to be delivered by the bushel wherever the said Moses Geisenberger directs, the same inside of five miles from the premises, and the said Jesse Bucher to have about three-eighths of an acre of potatoes, the said Jesse Bucher to repair the old fences and make all the new fences at his own expense, and the said Moses Geisenberger to furnish the rails, and said Jesse Bucher to haul them to the premises, the said Bucher promises to Moses Geisenberger twelve bushels of potatoes and five bushels of apples, and the said Bucher to pay all the taxes, with the exception of the bounty tax, and if said Bucher will deliver any hay on said premises, he shall have the privilege to take so much away again: but said Bucher shall leave as much hay on the premises as he shall receive when he moves on said premises, and said Bucher to sow out again as much winter grain that is now sowed out, in the proper time, next fall, and said Geisenberger to deliver one-half of the seed, and said Bucher to furnish his own fire-wood, and said Bucher will quit and surrender the premises at the expiration of the said term, in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

The Court (Long, P. J.) recapitulated the evidence and charged: * * *

"Since the failure of the husband, it appears, horses, wagons, ploughs and other articles, and stock, were bought. The husband and wife both testify that they were bought for her, [although he frequently, if not generally, attended to buying the articles on credit, giving his notes or obligations with bail.] They lived together at the tavern and different farms rented by them. She appears to be a woman of much energy of character and business habits, showing in her management considerable tact in making money. That during this time she also borrowed money without the intervention of her husband. He also, during that time, borrowed money in his name, but which he says, as I observed before, was for her use, and these loans were generally applied in buying articles and stocking the farm, and for carrying on the farming operations, and when the money was repaid, it appears from the testimony, it was done from the produce of the farms, or things raised or produced on them. The articles which Jacob Bucher bought for them, while at the tavern, not being returned, he issued a writ of replevin. The return of the articles was resisted by Jesse Bucher giving a forthcoming bond, with George

Fry as bail. After the case was pending some time, it was settled by the payment of the articles replevied, and she says she paid the money. The testimony leads us to believe that it was paid from her farming operations; at least, it is not shown that it was received from any other source. [But under any circumstances, the title to this property, according to the testimony, we think, continued in the husband; the payment of the money did not change the title.]

["When a married woman claims property which is taken in execution as the property of her husband, it must be clearly and satisfactorily shown that she has a separate estate in such property, that is, that it was paid for by her money, or that it was given to her, and that she holds it independent of her husband; now, it appears to us, she has failed to show this.] The law appears to be well settled that 'when the husband knows of and assents to his wife's purchases, no matter what she does with them afterward, he is answerable on her contract for them. How then can it be said that such goods are obtained by, or result from, the wife's property, and to be protected by the act. Her credit is nothing in the eye of the law, outside of the special case in which it is allowed, it is allowed to be pledged, and it is esteemed his credit, and the necessary corollary from the legal position is, that the fruits of it are his:' Robinson *v.* Wallace, 3 Wright 133. This is the language of the Supreme Court. In the case before us, the goods which she claimed were the result not only of purchases made by him with her consent, but of contracts actually entered into by him, save, perhaps, the money obtained from Weinhold. [It appears that the articles and stock which she claimed as paid for by her, were articles purchased generally by her husband for her use, as she says, and any money paid by her, it would appear, was paid out of the proceeds of the farms upon which they lived.] The husband had an interest in the farms, he was answerable for the rent. He lived on the farm with his wife; he being the renter and husband, he would, from the legal position which the law assigned him, be entitled to the fruits of such farms, her labor, under the circumstances, would accrue to his benefit. [In this case, whenever Mrs. Bucher undertook to show payment for any of the articles she claims, and money paid by her, the testimony leads to the presumption that the money was raised out of the land leased by her husband, by written leases entered into by him, but, as it is said, for her use.]

"There is no doubt, when a married woman has a separate estate, she has a right to manage and farm that estate, to receive the profits thereof, and appropriate them to her own use, and the creditors of her husband have no right to interfere therewith. She has a right to hold them, free and discharged from all claims of such creditors; [and, possibly, when a married woman upon

[Bucher v. Ream.]

her own credit rents a farm, and by her credit and exertions farms it, she would be entitled to the proceeds thereof, and hold it as her own, but that I presume is not the case now before us.] In this case the husband rents the property in his own name, and takes a lease accordingly, lives with the wife and with her works on the farm, although his labor perhaps does not amount to much, purchases articles and gives his notes. It is true that the husband and wife both say, that this was done at the instance of the wife, but that don't release the husband; he is still responsible, for if he had failed to pay the rent for the farm which he leased, and upon which he and his wife lived, or the notes which he gave for articles purchased for the use of the farms, the stock on them would have been liable. It is said the wife worked on the place and attended to the farm; when a wife does work on a farm, carried on by the credit of the husband, the husband and wife acting together, in a case of that kind the husband would be entitled to the services of the wife. It would be different when she lived on her separate estate or property. [If from the testimony which was given in the case, it would be doubtful from the deductions which could be legitimately drawn from such testimony, whether the property levied upon and in dispute in this case was liable for the debts of the husband, we would not be justifiable in instructing you what your verdict should be, but when the law would be the same from any deductions which could be drawn from the evidence, it is the duty of the court to instruct the jury what their opinion is, and the jury ought to be governed by such opinion. Every case is to be governed according to law. In this case we are of the opinion that upon the law arising upon the facts given in evidence, the plaintiffs have not maintained their suit, and your verdict ought to be for the defendant."]

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned eleven errors, viz. :—

1-3. The admission of the evidence objected to.

4. The court erred, in his charge, in this : " Although he (meaning Jesse Bucher) frequently, if not generally, attended to buying the articles on credit, giving his notes or obligation with bail," and not referring to the proofs submitted in relation to the note or obligation signed for his wife.

5-10. The other parts of the charge in brackets.

11. The court erred in not submitting the proofs of the evidence in the case of Polly Bucher's ownership, of the property in question, to the jury as a question of fact, and in saying " the jury ought to be governed by the court's opinion, and that their verdict ought to be for the defendant."

*D. W. Patterson*, for plaintiff in error, cited Brown v. Pendle-

[Bucher *v.* Ream.]

ton, 10 P. F. Smith 421; Trimble *v.* Reis, 1 Wright 448; Rush
*v.* Vought, 5 P. F. Smith 437; Welch *v.* Kline, 7 Id. 428; Earl
*v.* Champion, 15 Id. 191.

*W. R. Wilson*, for defendant in error, cited Rhoads *v.* Gordon,
2 Wright 277; Auble *v.* Mason, 11 Casey 261; Gault *v.* Saffin,
8 Wright 307; Hoffman *v.* Toner, 13 Id. 231; Hallowell *v.* Horter,
11 Casey 375; Robinson *v.* Wallace, 3 Wright 129; Flick *v.*
Devries, 14 Id. 266; Aurand *v.* Schaffer, 7 Id. 363.

The opinion of the court was delivered, October 9th 1871, by
WILLIAMS, J.—This case was well tried in the court below.
The evidence complained of was properly received. It tended to
show that the property in controversy belonged to the husband
and not to the wife. And the court rightfully refused to submit
the question of the wife's ownership to the jury. There was no
sufficient evidence that any portion of the property levied on was
paid for with the funds, or consisted of the products, of her sepa-
rate estate. On the contrary the evidence showed that the wife
had no separate property or estate left, after the insolvency and
voluntary assignment of her husband in 1860 in which she joined.
The property levied on was subsequently acquired, and as shown
by the evidence, was the fruit of their joint labors and earnings.
It is clear that the hay in stack, and the wheat, oats and potatoes
in the ground belonged to the husband as tenant of the Geisen-
berger farm; and it is equally clear that the residue of the pro-
perty also belonged to him, for it was either paid for with money
acquired by the joint labor of himself and wife, or with money
borrowed by the wife, for which he was responsible: Hallowell *et
al. v.* Horter, 11 Casey 375; Rhoads *v.* Gordon, 2 Wright 277.
It is true that the wife is entitled to the products and avails of
her separate property, though the labor of her husband may mingle
in the production: Rush *v.* Vought, 5 P. F. Smith 437; and pro-
perty purchased by the wife on the credit of her separate estate
or by her earnings, derived from the management of it, is pro-
tected from her husband's creditors: Brown *v.* Pendleton, 10 P.
F. Smith 419. But where the wife has no separate estate, she
can acquire no separate property with her earnings during cover-
ture. Her earnings belong to her husband, and if she purchases
property with borrowed money or on credit, it belongs to her hus-
band as it respects his creditors, and is liable for his debts: Ray-
bold *v.* Raybold, 8 Harris 311; Robinson & Co. *v.* Wallace, 3
Wright 129.

To enable the wife to maintain her claim to the property in
controversy, we should have to reverse the rule laid down in Hal-
lowell *v.* Horter, and hold that property, purchased and paid for
with the joint earnings of husband and wife, belongs to the wife

[Bucher *v.* Ream.]

instead of being the exclusive property of the husband, and liable for his debts. Whatever changes may hereafter be wrought by the spirit of modern reform, it has not yet so far changed the law as to give the wife the ownership of her own and her husband's earnings.

Judgment affirmed.