## Leinbach *versus* Templin.

1. A married woman, having no separate estate, cannot, as against her husband's creditors, acquire real or personal property on her credit, or on the credit of her subsequent earnings. Nor does the fact that she has been decreed entitled to the benefits of the Act of April 3, 1872, (P. L., 35,) modify the rule as to the measure of proof incumbent on a wife who claims property as against her husband's creditors.

2. Property bought by a married woman upon her individual credit, and subsequently paid for solely with the profits of business in which she engages therewith, is to be regarded as the property of her husband, and subject to execution by his judgment creditors.

March 4, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1884, No. 245.

This was a feigned issue, under the sheriff's interpleader Act, wherein Lavina Templin, wife of Levi Templin, was plaintiff, and Daniel W. Leinbach was defendant, to determine the ownership of certain goods which had been levied upon as the property of Levi Templin under an execution upon a judgment against him, held by Daniel W. Leinbach, and which were claimed by Mrs. Templin as her property.

On the trial, before HAGENMAN, P. J., the evidence on behalf of the plaintiff was to the following effect: In 1877 Levi

Templin, a butcher, was financially embarrassed. Among other debts were two notes held by Amos Rothermel, his cousin, for the aggregate sum of $765. By an arrangement between Templin and Rothermel, certain personal property belonging to Templin, and used by him in conducting his business, was appraised at the sum of $700, and Rothermel agreed to take the same in payment of the notes, and to transfer the property back to Mrs. Templin upon her agreeing to pay the sum of $779.50, in instalments of $50 a month. This agreement was consummated in the following manner: At about two o'clock A. M., on December 18, 1877, the property was removed from Templin's to a shed on the property of his adjoining neighbor, and there delivered to Rothermel, who gave up his notes. In the forenoon of the same day it was moved back to Templin's place and delivered to Mrs. Templin, who thereupon executed and delivered to Rothermel an instrument of writing purporting to be a bill of sale of the same goods to him, reciting a consideration of $779.50 paid by Rothermel to her, and providing that upon payment by her to Rothermel of the sum of $50 on the first days of each month thereafter, until the said sum of $779.50, with interest, was fully paid, then the said instrument to be null and void, otherwise to remain in full force. Levi Templin then made an assignment for the benefit of his creditors. Mrs. Templin retained possession of the said goods, and the butchering business was continued by Levi Templin, for his wife, in the same place and manner as theretofore, except, that receipts and checks, &c., were signed " L. Templin, agent," instead of " L. Templin." Mrs. Templin paid regularly the instalments due Rothermel, the last payment being made February 14, 1879. Levi Templin claimed and received $300 in cash and furniture from his assignee for creditors, which he gave to his wife. There was no evidence that Mrs. Templin had any separate estate not derived from her husband.

Upon August 10, 1880, Mrs. Templin presented her petition to the Court of Common Pleas of Berks county, praying that she might be declared entitled to the benefits of the Act of April 3, 1872, P. L., 35, entitled "An Act securing to married women their separate earnings," which was granted by the court and the petition was duly recorded.

The judgment of Daniel W. Leinbach against Levi Templin was entered September 20, 1880, upon a note dated June 1, 1877, and a fi. fa. issued thereon December 6, 1880, under which the goods in question were levied upon as the property of Levi Templin, and the same were claimed by Mrs. Templin, when this feigned issue was awarded.

The defendant offered no evidence, but presented, inter alia, the following point:

1. That the plaintiff having made claim to the property set out in the declaration by purchase during coverture, after the insolvency of the husband, she must show by evidence, which does not admit of a reasonable doubt, that she bought it with her own money, and paid for it with funds which were not furnished by her husband. No such evidence having been given in the case, the plaintiff is not entitled to recover, and the verdict should be for the defendant.

Answer.—We say to you, as we said before, the wife brought no money to her husband, and it comes back to the question, that if you find the transaction was a fair and honest one, between Templin and Rothermel, and there was a sale from Rothermel to Mrs. Templin, and she then carried on her business in her own name, the profits from the business were hers, and if from the profits thereof she paid for this property, the property was hers, and was not liable to seizure under the execution; that I believe is a full answer to the point.

The court, in the general charge, instructed the jury, inter alia, as follows: "A transfer, whatever it is, must be a transfer in good faith, and if this was a mere shifting around of the property so as to save it from creditors, and it was not done in good faith, the wife will receive no title. You have heard what the witnesses said about the bill of sale, and it is for the jury to say whether this was an honest, fair, and bonâ fide transaction; and if it was, under the view the court has of the law, the title passed over to the wife, upon her paying for it. It is claimed on the part of the defendant that all the earnings that were had, or everything that was done by the husband in carrying on the business of his wife, belonged to the husband. We say to you, as a matter of law, that the wife had a right to carry on business in her own name. She had a right to employ her husband as her agent, and if the business was honestly carried along for the benefit of the wife, all the earnings that were had in the business belonged to the wife, and if the payment of the property was made by the earnings of the business which was carried on by the wife, the wife was legally the owner of it. If the husband's money paid for the property, it would be the husband's property. But if the property was paid for by the business as it was carried on by the wife, the property was hers. . . . . . The jury will ascertain from the evidence whether the property was paid for out of the business which was carried on by the wife; and if so, she became owner of it when she made the last payment in February, 1879, and it being her property, the sheriff could

[Leinbach v. Templin.]

not sell it, and for that property the verdict would have to be in favor of the plaintiff.

Verdict and judgment for the plaintiff. The defendant took this writ of error, assigning for error the answer to the above point, and the portions of the charge above quoted.

*A. H.*, and *H. D. Green*, for the plaintiffs in error.—The transaction between Templin and his wife and Rothermel was evidently a sham and a device, made with intent to defraud his creditors. But even had it been bonâ fide, it would not avail the plaintiff in the issue, because she utterly failed to show that she had any separate estate, and the evidence was that the alleged purchase of the goods by her from Rothermel was made upon her credit, the instalments to be paid out of her subsequent earnings from the business, and that they were in fact so paid. It is well settled that this cannot be done as against the husband's creditors. When the wife has no separate estate she cannot acquire property on her personal credit; her earnings during coverture belong to her husband, and are liable for his debts: Bucher *v.* Ream, 18 P. F. S., 426; Raybold *v.* Raybold, 8 Harris, 311; Hallowell *v.* Horter, 11 Casey, 375; Rhoads *v.* Gordon, 2 Wr., 280. She was not declared entitled to the benefits of the Act of 1872 until after the bulk of the property had been paid for in full out of her earnings from the business.

*Frank R. Schell*, for the defendant in error.—Mrs. Templin obtained the right to her separate earnings by her petition and the decree under the Act of April 3, 1872. Having actually paid for the goods in question out of her earnings, prior to the entering of Leinbach's judgment, the only question was as to the good faith of the transaction between Levi Templin and Rothermel, and that question was properly submitted to the jury.

Mr. Justice CLARK delivered the opinion of the court, May 26, 1884.

The Act of 1848 provides, in very clear terms, that "property of whatever kind or nature, which shall accrue to a married woman, during coverture," shall be "owned and enjoyed by her, as her own separate property," and "shall not be subject to levy and execution for the debts and liabilities of her husband." It is her "property" only, however, that the legislature intended to protect; her earnings, her efforts and her credit are her husband's, since the Act of 1848, as before. What she may be said to acquire, as the result of her skill and industry, or on her merely personal credit, accrues to the hus-

[Leinbach *v.* Templin.]

band, and as to creditors is to be taken as his: Raybold *v.* Raybold, 8 Harris, 311; Bucher *v.* Ream, 18 P. F. S., 421. ...

Goods purchased by a married woman on her own credit, are not her separate property: Robinson *v.* Wallace, 3 Wr., 133; her credit is nothing in the eyes of the law; when she does contract, the law esteems her the agent of her husband: Heugh *v.* Jones, 8 Casey, 432; Hollowell *v.* Horter, 11 Casey, 375. A married woman must have a separate estate, to protect her purchase upon credit, an estate available, and proportionate to the credit it supports. The purchase must in fact be made, not upon her credit, but upon the credit of her separate estate, upon her ability to pay out of her own funds: Gault *v.* Saffin, 8 Wright, 307.

The ownership of the corpus of an estate, real or personal, gives title to its income and profit. The title to land gives title to its products, no matter whose labor may have been expended in the production: Rush *v.* Vought, 5 P. F. S., 442; Musser *v.* Gardner, 16 P. F. S., 247. But a married woman cannot acquire title to land upon the credit of its after production, nor to any property or business upon its prospective profits. The production and profits are, in general, the result of the labor of the husband and wife, or their children, and, whilst creditors have no claim on the husband's labor or that of his family, as such, yet when that labor acquires title to property, they may have a claim upon the property thus acquired. When the estate is hers, the production is hers, the labor expended in realizing income cannot affect the title to either.

It is admitted that Mrs. Templin had no separate estate; the purchase of the property was made on her credit alone; the business was conducted with the property thus purchased, and the property was paid for out of the earnings of the business. We may accept the verdict of the jury, under the charge of the court, as a finding that the transaction was bonâ fide, and was not a device to save it from Templin's creditors; but, assuming this, the property was not the property of Mrs. Templin; her credit, under the circumstances, was her husband's credit, and the earnings of the business was the husband's money; it follows that the property involved in the transaction of 18th December, 1877, was, as respects his creditors, the husband's property.

It was, of course, competent for Templin, so far as the transaction affected himself only, to place the title and ownership in his wife, not only of that embraced in the agreement of 18th December, 1877, but of that also which he had taken under the exemption law. A husband may freely bestow his goods upon his wife or upon any other person, but he must be

[Leinbach v. Templin.]

just to his creditors before he can afford to be generous to his friends. The rights of creditors rise superior to claims which are founded in no valuable consideration.

Nor can we discover how the petition and decree of 10th August, 1880, which secured to Mrs. Templin the rights of a feme sole trader could, without more, have any effect upon the determination of this case. It is true that a portion of the property embraced in the sheriff's levy, was purchased after the date of this decree, but with whose funds was the purchase made? It has not been shown that the purchase was made with the moneys of the wife; where a wife claims property, as against her husband's creditors, she must show affirmatively by clear and full proof, that she paid for it with her own separate funds: Keeney v. Good, 9 Harris, 355; Gamber v. Gamber, 6 Harris, 366. She must make it clearly appear that the means of acquisition were her own, independently of her husband: Auble's Administrators v. Mason, 11 Casey, 262.

The fact that Mrs. Templin, at the time of the purchase of the cattle and hogs, possessed the privileges and exercised the rights of a feme sole trader, does not dispense with the production of this measure of proof. It was not the intention of the legislature to dispense with the presumptions which ordinarily and of necessity arise in favor of creditors, in transactions between husband and wife, affecting the ownership of property in the wife's name. The Act of 3d April, 1872, P. L., 35, provides merely that the separate earnings of any married woman, howsoever realized, shall accrue to and inure to her separate benefit and use, and be under her exclusive control, as if she were feme sole, and not be liable to any claim of the husband or his creditors. The Act further provides: "That in any suit at law, or in equity, in which the ownership of such property shall be in dispute, the person claiming such property under this Act shall be compelled, in the first instance, to show title and ownership in the same."

In this case no such proof was made, the purchase money was supplied from the earnings of the business, but the business as we have already seen belonged to the husband, and its earnings were his.

For the reasons stated, therefore, we are of opinion that the several assignments of error are sustained, and the

Judgment is reversed, and a venire facias de novo awarded.