## ORR & LINDSLEY v. JENNIE V. BORNSTEIN.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 28, 1889—Decided February 25, 1889.

1. If a married woman who has become entitled to her separate earnings under the act of April 3, 1872, P. L. 35, borrow money upon her personal credit, whether possessed of a separate estate or not, and therewith in good faith purchase a stock of goods with which to engage in business, the goods may not be seized and sold for the debt of her husband.
2. When a married woman's right to property is found to exist, her husband may not only act as her agent, but he has the legal right to give her his labor and skill in conducting her business, and his creditors cannot sell her property produced by his labor and skill.
3. The said act of April 3, 1872, construed with the act of April 11, 1848, P. L. 536, in the light of the Married Woman's Property Act of June 3, 1887, P. L. 333; Leinbach v. Templin, 105 Pa. 522, and Pier v. Siegel, 107 Pa. 502, distinguished; Bovard v. Kettering, 101 Pa. 181, and Spering v. Laughlin, 113 Pa. 209, followed.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 1 January Term 1889, Sup. Ct.; court below, No. 150 September Term 1886, C. P. No. 2.

On November 20, 1886, William C. Orr and D. B. Lindsley, trading as Orr & Lindsley, recovered a judgment against Louis

Bornstein for $1,258.12, and issued a writ of fieri facias upon which a levy was made on a stock of goods in a store-room at No. 1008 North Second street, Philadelphia. The goods being claimed by Jennie V. Bornstein, the wife of the execution defendant, an issue was framed under the sheriff's interpleader act, wherein Mrs. Bornstein was made plaintiff and the execution creditors defendants.

At the trial on April 5, 1888, the evidence showed that on March 3, 1885, Mrs. Bornstein filed her petition for the benefit of the act of April 3, 1872, P. L. 35, securing to married women their separate earnings. Her petition and the decree thereon were duly recorded. Thereupon, having determined to go into the business of a shop-keeper, she borrowed from a friend and relative the sum of $1500, for which she gave her individual note.

Ellis Silberstein, called for plaintiff, testified:

"I live at 701 Marshall street. My store is 123 North Ninth. I know the plaintiff. I loaned her on March 23, 1885, by checks, $1,450 (two checks), and $50 in cash. She came to me and said she wanted to open a store and make a living for herself and family, and I went with her to look at the place and told her I would lend her $1,500. I asked her how she proposed to pay me back; she said she would give me her note, and pay it out of her earnings from the store; a six months' note. She was to carry on the business herself, I understood, and to pay it out of the earnings of the store. I asked her before I gave her the money if she had made application to the court. I said to her I knew she was not entitled under the law to her separate earnings unless she was a feme sole trader. She said she had made application. I asked her who the lawyer was who drew up the feme sole papers. She told me who the lawyer was. I saw the lawyer, Mr. Moyer, before I loaned the money, to see if it was all right. He said yes, he had drawn up the papers. Her husband had nothing to do with it. I would not have given him the money. It was not to be paid back by him or out of his money. She said all money or profit made out of store she was to have. Knowing she was an industrious woman, I loaned her the money on the strength of these representations."

The stock of goods started with the money thus borrowed

was that levied upon under the defendant's execution. The husband was engaged in the management of the store "assisting as any other clerk or employee would have done."

The defendant requested the court to charge that under all the evidence the verdict should be for the defendants.

The court, MITCHELL, J., refused to so charge and instructed the jury as follows:

" It is lawful for a married woman to carry on business, provided it is not a cover for fraud and to prevent her husband's creditors from collecting their claims. The whole question is one of good faith. If you are satisfied that it was really her business, it cannot be taken to pay her husband's debts, and in that case you should find for the plaintiff."

The jury having returned a verdict for the plaintiff, judgment was entered thereon, when the defendants took this writ, assigning as error the refusal of the defendants' point and the instructions to the jury.

*Mr. Isaac S. Sharp* (with him *Mr. S. Horace Alleman*), for the plaintiffs in error:

The act of April 3, 1872, P. L. 35, does not make a married woman, availing herself of its benefits, a feme sole trader. To exempt property acquired by her with money borrowed on her individual credit, from seizure under an execution against her husband, it must be made to appear affirmatively: (1) That she had property of her own which could have been regarded by her proposed creditor as a basis for giving her credit; (2) That he knew of the existence of her separate property and extended her the credit upon the basis of it: Bovard v. Kettering, 101 Pa. 181; Spering v. Laughlin, 113 Pa. 209; Leinbach v. Templin, 105 Pa. 522; Blum v. Ross, 116 Pa. 163; Lochman v. Brobst, 102 Pa. 481; Pier v. Siegel, 107 Pa. 502; Baxter v. Maxwell, 115 Pa. 469; Sober v. Standart, 110 Pa. 47; Sellers v. Heinbaugh, 117 Pa. 218.

*Mr. George P. Rich* (with him *Mr. Mayer Sulzberger*), for the defendant in error:

The cases of Pier v. Siegel, 107 Pa. 502; Hess v. Brown, 111 Pa. 124; Spering v. Laughlin, 113 Pa. 209, and Baxter v.

Maxwell, 115 Pa. 469, establish that a married woman who has separate property of her own, however small, may use it as a basis of credit upon which to procure money or goods and carry on business therewith, free from liability for her husband's indebtedness. It is contended that her separate earnings, though secured to her under the act of April 3, 1872, are not such separate property as will serve as a basis of credit.

1. It is not easy to see the ground for such a distinction. Undoubtedly, since the act of 1848 one may make a gift of property to a married woman, which she may hold against her husband's creditors: Hess v. Brown, 111 Pa. 124. When, instead of a gift, it is a loan to her, the test in determining ownership and consequent liability to creditors must be, to whom is the credit given?—from whose funds is the repayment to be made?

2. Blum v. Ross, 116 Pa. 163, turned upon the question of actual fraud: Lochman v. Brobst, 102 Pa. 481 ; Pier v. Siegel, 107 Pa. 502; Sober v. Standart, 110 Pa. 47, and Sellers v. Heinbaugh, 117 Pa. 218, are all distinguishable in their facts. But the question is no longer an open one, since Bovard v. Kettering, 101 Pa. 181, and Zurn v. Noedel, 113 Pa. 336. Bovard v. Kettering rules that a married woman entitled to the benefits of the act of 1872, and engaged in business, may hire labor for the purposes of that business, to be paid for out of its earnings, for which she and not her husband is alone liable. Zurn v. Noedel, following the foregoing, holds a married woman under the benefits of said act in like manner alone responsible for money borrowed by her for the purposes of her business. That the loan was made to the wife in this case on the credit of her future earnings in the business; that the business was hers; that the earnings as they accrued were hers, and that her husband is not liable, either for the original loan or the debts contracted in the course of the business, are decisive of this case.

OPINION, MR. JUSTICE STERRETT :

It was incumbent on the plaintiff in this feigned issue to prove that the goods levied on by her husband's creditors and claimed by her were in fact her separate property, not acquired in any manner, directly or indirectly, from or through her

husband or on his credit. If the evidence introduced by her was believed by the jury, as by their verdict it appears to have been, the proof of her title was complete.

In substance, the uncontradicted evidence was, that in March, 1885, Mrs Bornstein, a married woman, having then no separate property of her own, determined to engage in the business of a shopkeeper, with the view of supporting herself and family. In furtherance of that purpose she presented a petition to the Court of Common Pleas of Philadelphia and in due form obtained the benefit of the act of April 3, 1872, entitled "An act securing to married women their separate earnings." She then communicated to her friend and relative, Mr. Silberstein, her plans, etc., and requested him to furnish the funds necessary to purchase a stock of goods. After making the necessary inquiry and satisfying himself that her purpose was commendable, and that, under the law, her separate earnings were secured to herself, so that they could not be taken and applied to her husband's debts, he loaned her $1,500, with which she, in good faith, purchased a stock of goods and embarked in business on her own account. The loan was not made at the request, or in any manner upon the credit of her husband, or his property, neither of which he possessed, but solely on her personal credit and on the faith of her promise and ability to repay the same out of her separate earnings, to be acquired in the prosecution of the business. Silberstein testified positively that the husband had nothing whatever to do with the loan; that he would not have given him the money, and that it was "not to be paid back by him" or out of his property or effects, if he ever acquired any. In short, the plaintiff's evidence all tended strongly to prove the foregoing facts. No rebutting testimony was even offered by plaintiffs in error; and, by necessary implication from the verdict, the facts as claimed by plaintiff below were found by the jury.

After the business, thus established by Mrs. Bornstein, had been conducted by her for about eighteen months, plaintiffs in error, creditors of her husband, obtained judgment against him and levied on the stock of goods which represented the original purchase made with the money loaned by Silberstein as above stated. The sheriff was duly notified by Mrs. Bornstein

that the goods levied on were her separate property and that her husband never had any interest therein. Thereupon, the issue under the sheriff's interpleader act was awarded to determine whether in fact the goods were her separate property.

The learned judge who presided at the trial refused to charge, as requested by defendants below, " that under all the evidence the verdict should be for the defendants," and said to the jury : " It is lawful for a married woman to carry on business, provided it is not a cover for fraud, and to prevent her husband's creditors from collecting their claims. The whole question is one of good faith. If you are satisfied that it was really her business, it cannot be taken to pay her husband's debts, and in that case you should find for the plaintiff." This instruction and the refusal to charge as requested by defendants, constitute the only specifications of error.

The question thus presented for our consideration is whether a stock of goods, acquired and held in good faith, as above stated, by a married woman legally entitled to her own earnings, can be seized and sold by her husband's creditors as his property ? We think they cannot. It was never intended that the law should sanction such an act of injustice. The gradual tendency of modern legislation, since the act of 1848, has been to emancipate married women from their common law disabilities and invest them with at least some of the rights and privileges they enjoyed before marriage. That fact should not be ignored by the courts. On the contrary, their decisions should be so moulded as to harmonize, as far as practicable, with the spirit of such legislation.

While the act of 1848 was doubtless intended to secure married women in the ownership, use, and enjoyment of their separate property, its provisions were construed to embrace only property in the strict sense of the term. It was accordingly held, at the outset, that a married woman's earnings, the result of her own skill, credit, and industry, were not within the protection of the act, and therefore belonged to her husband as before ; that property purchased and paid for by her out of her own earnings, or the joint earnings of herself and husband, unless earned in the management of her separate estate, belonged not to her, but to her husband : Hallowell v. Horter, 35 Pa. 375 ; Robinson v. Wallace, 39 Pa. 129 ; Bucher

Opinion of the Court.

v. Ream, 68 Pa. 421, and other cases. The result was that a married woman, not possessed of any separate estate, and so unfortunate as to have a thriftless and impecunious husband, was practically helpless. She had neither separate property, nor the fruits of her own skill and industry, as a basis of credit. Her earnings belonged to her husband, and were liable to seizure and sale by his creditors. Feme sole traders and married women, deserted and neglected by their husbands, were, of course, unaffected by that construction of the act, but the hardships resulting from it were so keenly felt by many, not included in either of these classes, that a remedy therefor was provided by the act of April 3, 1872, the first section of which declares: " The separate earnings of any married woman . . . . . whether said earnings shall be as wages for labor, salary, property, business, or otherwise, shall accrue to and enure to the separate benefit and use of said married woman, and be under the control of such married woman independently of her husband, and so as not to be subject to any legal claim of such husband, or to the claims of any creditor or creditors of such husband, the same as if such woman were a feme sole: Provided, That in any suit at law or in equity, in which the ownership of such property shall be in dispute, the person claiming such property, under this act, shall be compelled in the first instance to show title and ownership in the same." For the purpose of preventing " any fraudulent practices under " the act, the second section requires that " before any married woman shall be entitled to its benefits " her petition shall be presented to the Court of Common Pleas, etc., and recorded in the office for recording deeds, etc., and thereupon " such record shall be conclusive evidence of the right of such married woman to the benefit of the first section," above quoted. By the " Married Woman's Property Act " of June 3, 1887, P. L. 333, the disabilities of coverture have been further lessened, to a very considerable extent; but, inasmuch as the case now under consideration arose before, it cannot be affected by the provisions of that act.

In view of the remedial object of the act of 1872, as well as the tendency of more recent legislation, the act should be construed liberally, as in the main it has been. In Bovard v. Kettering, 101 Pa. 181, it was held that while the act does not

confer on a married woman all the privileges of a feme sole trader, it does give her the right to engage in business; and, for indebtedness contracted in the prosecution of such business, she may be sued without joining her husband. It was there said by the present Chief Justice: " The act secures to her the earnings of her business. This is an implied authority to engage in business. She is to enjoy her earnings ' the same as a feme sole.' If she assumes the rights of a feme sole, she is also subject to the duties and liabilities of a feme sole. The act of 1872 was not intended to license a class of female pirates who should engage in business without responsibility, and make reprisals upon the grocer, the baker, the butcher, the mechanic, and other persons with whom she may deal in the transaction of her business. To the extent that the defendant obtained the services and property of others in keeping her hotel, she is liable to the parties in a suit at law precisely as if she were a feme sole." To the same effect is Spering v. Laughlin, 113 Pa. 209. In that case it was also held, in accordance with previous authorities, that, " if a married woman's separate right to property be found to exist, her husband may not only act as her agent, but he has the legal right to give her his labor and skill in conducting her business, and his creditors cannot sell her property produced by his labor and skill."

The act of 1872 undoubtedly conferred on plaintiff below the right to embark in business on her own account, and thus render herself liable for debts contracted in the prosecution of that business as if she were a feme sole. If her friend Silberstein had confidence in her integrity and business qualifications, and was willing to furnish her with money to buy a stock of goods, relying solely on her honesty and ability to repay the same out of the business, why had she not the right to accept and use the same as her own? It is said she had no separate estate, and therefore no basis of credit. While it may be true, as a general proposition, that without separate property a married woman has nothing on which to base a credit, it is not universally so. Known integrity and business qualifications, coupled with the right to engage in business on her own account, with full control of her own earnings, secured to her under the act of 1872, ought to be and undoubtedly are recog-

nized elements of substantial credit, for any married woman. That is shown by the facts impliedly established by the verdict in this case. If Silberstein had made an absolute gift of the $1,500 to her, no one could doubt her right to purchase a stock of goods therewith, and hold the same as against her husband's creditors. What difference, in principle, can it make that, instead of giving her the money, he loaned it to her, not upon her husband's credit, but solely on the faith he had in her integrity and ability to repay it? Certainly, the plaintiffs in error, creditors of her husband, have no claim, legal or equitable, upon the goods purchased with money procured exclusively on her individual credit and the credit of the business in which she rightfully engaged. The principle that ownership of separate property is the only basis of credit for a married woman, will not bear the test of reason, when applied to others than married women who have not secured the benefits of the act of 1872, and are not feme sole traders, etc.

As we understand the cases relied on by plaintiffs in error, they are not in conflict with the rulings of the learned judge in this case. In Leinbach v. Templin, 105 Pa. 522, a married woman was in possession of property which appeared to have been bought and paid for, in part at least by her earnings, in a business which she carried on prior to obtaining the benefits of the act of 1872. As to those prior earnings, they, of course, under all the authorities, belonged to her husband. In Pier v. Siegel, 107 Pa. 502, and similar cases, the husband was liable for the loan.

This case was well tried. The questions of fact presented by the evidence were fairly submitted to the jury with instructions of which plaintiffs in error have no just reason to complain. The assignments of error are not sustained.

Judgment affirmed.