## Betsey Frost v. Frank T. Knapp and Charles Allen, Appellants.

*Married woman—Crops on farm, rented by her exempt from husband's creditors.*

A married woman has the right to engage in business on her own account as if she were a feme sole, and the proceeds of such business whether profits or crops from a farm rented by her are secure against her husband's creditors.

A married woman owning a separate estate rented a farm which she managed. *Held*, that crops raised on the farm are exempt from seizure by her husband's creditors. The fact that she expected to pay the rent from the proceeds of her labor and skill does not invalidate her title to them, nor does the fact that her husband may have contributed his labor on the work of the farm.

Argued Jan. 12, 1899. Appeal, No. 16, Jan. T., 1899, by defendants, from judgment of C. P. Wyoming Co., Nov. T.,

1896, No. 114, on verdict for plaintiff.  Before RICE, P. J.,
BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and
BEEBER, JJ.  Affirmed.  Opinion by RICE, P. J.

Trespass.  Before DUNHAM, P. J.

It appears from the evidence that H. C. Frost owned a farm
upon which he and the plaintiff, his wife, resided.  In 1893
there were several judgments against H. C. Frost, among them
one of his wife Betsy Frost for $675, and another in favor of
Charles Allen for $100.  In the spring of 1893 plaintiff issued
a fi. fa. on her judgment and sold the personal property of H. C.
Frost.  At this sale she purchased a lot of personal property
leaving an unpaid balance of about $300 on her judgment.  In
the summer of 1895 the plaintiff issued a fi. fa. and sold the
farm of H. C. Frost to James W. Piatt.  There was not money
enough realized on this sale to pay anything on either the judg-
ment of Betsy Frost or Charles Allen.  In 1895, Piatt conveyed
the farm to Betsy Frost for $1,800, she paying no money, but
giving a bond and mortgage for the full amount of the purchase
money.  In 1896, Betsy Frost reconveyed the property to James
W. Piatt.  H. C. Frost and family continued to reside on the
farm since 1893 and on March 9, 1896, Piatt executed a lease
of the farm to Betsy Frost for the term of one year for $125, it
being agreed between them that the rent should be paid out of
the products of the farm during the year.  In August, 1896,
Charles Allen upon another fi. fa. issued on his judgment, caused
the sheriff to sell a quantity of grain, potatoes and hay produced
on the farm in the summer of 1896.  Betsy Frost, claiming the
ownership of this property by virtue of her lease, brought an
action of trespass against Charles Allen and the sheriff for sell-
ing the property and recovered a judgment of $100 on the ver-
dict of the jury.  There was evidence tending to show that
Betsy Frost had certain separate estate of her own not derived
from her husband.

Defendant presented among others the following point, which
was affirmed by the court:

[7. Fraud is never to be presumed, but like every other ma-
terial fact in controversy must be proved by competent evidence.
*Answer :* That we affirm.  When we say fraud we mean legal
fraud.  There is no evidence of actual fraud in this case.] [4]

The court charged the jury in part as follows:

[She must show that at the time the lease was executed and entered into, to the satisfaction of the jury, by the preponderance of the evidence, that Mr. Piatt entered into that lease and gave her that credit because she had separate property and that it was entirely upon the strength of that separate property that he gave her the credit.] [1] . . . .

[We say to you it is incumbent upon the plaintiff in every case to make out his or her claims affirmatively by the preponderance of the evidence. We say to you with those instructions, if you find from the preponderance of the evidence in this case that this lease was given by Mr. Piatt to Mrs. Frost upon the strength of her separate estate, that then the lease belonged to her, the property raised upon the premises would be hers.] [2]

[Where there is an honest debt due it is not persecution for parties to issue execution and sell the property of the defendant that they allege is his property, and neither are persons obliged to work their family, their wife or their children, for the payment of their debts. They are not obliged to work them and require that their earnings shall go in as a fund to pay their debts.] [3]

Verdict and judgment for plaintiff for $100. Defendants appealed.

*Errors assigned* were (1–3) to portions of the judge's charge, reciting same. (4) Affirming plaintiff's seventh point, reciting point and answer.

*James E. Frear*, for appellants.—These circumstances placed the crops levied on in the apparent possession of H. C. Frost, and his creditors were justified in presuming that the property belonged to him: Eavenson v. Pownall, 182 Pa. 587.

When the wife undertakes to prove her title to the property as against her husband's creditors, it is error for the court to charge the jury that she can establish her title by the weight of the evidence: Taylor v. Paul, 6 Pa. Superior Ct. 496; Eavenson v. Pownall, 182 Pa. 587; Auble v. Mason, 35 Pa. 261.

The rule of law applicable to this case is, the earnings of the wife and husband on property purchased by her on its credit

belong to the husband's creditors : Robinson v. Wallace, 39 Pa. 129; Leinbach v. Templin, 105 Pa. 522; Raybold v. Raybold, 20 Pa. 308.

*C. O. Dersheimer* and *Jas. W. Piatt,* for appellee.—The sole question in the case is one of fact, which the jury has determined against the appellant, under very careful instructions from the court, laying down the rule against the appellee with more rigor than the law requires.

We are willing to rest our case upon appellant's authority, Eavenson v. Pownall, 182 Pa. 587, the latest on this branch of the subject.

Where a husband in the enjoyment of the marital relation is permitted to live and be maintained upon the property of his wife, managed by her for her own use and benefit, he does not acquire a title to the products merely by the labor he voluntarily bestows upon it: Phillips v. Hall, 160 Pa. 60; Spering v. Laughlin, 113 Pa. 209; Holcomb v. Bank, 92 Pa. 338.

The Act of June 8, 1893, P. L. 344, gives a married woman the power to carry on a business as if she were a feme sole, and the proceeds of this business belong to her, and cannot be seized by her husband's creditors. The Act of June 3, 1887, P. L. 332, was nominally repealed by the act of 1893, but is practically to be considered as "re-enacted and enlarged" by the Act of 1893, P. L. 344: Nuding v. Urich, 169 Pa. 289; Curry v. Phillips, 14 Pa. C. C. R. 479; Kuhn v. Ogilvie, 178 Pa. 303.

Hence the cases under the act of 1887 are to be regarded as interpreting the law now in force: 2 Pepper & Lewis's Dig. 2887, note 1.

The act of 1887 "enabled a married woman to carry on a farm, and entitled her to all the products of the farm or the proceeds of the business, . . . . and belong to her and cannot be taken to pay her husband's debts:" Wayne v. Lewis, 23 W. N. C. 441.

The act of 1887 works a radical change in the rights and liabilities of a married woman: Adams v. Grey, 154 Pa. 258; and has emancipated her from common-law disabilities (with a few exceptions) and authorized her to contract as if she were a feme sole : Steffen v. Smith, 159 Pa. 207.

Since the act of June 3, 1887, a married woman without

separate estate may for the purpose of engaging in business, purchase property wholly on credit, and hold the same against her husband's creditors: Walter v. Jones, 148 Pa. 589; and she may purchase land on credit and give a valid security for its payment: Campe v. Horne, 158 Pa. 508.

OPINION BY RICE, P. J., May 18, 1899:

Crops produced on a farm in the joint occupation of husband and wife presumptively belong to the husband, and in a contest between her and his creditors the burden of overcoming the presumption by clear and satisfactory testimony rests upon her: Eavanson v. Pownall, 182 Pa. 587. If, however, the farm belongs to her, the fact that the husband's labor entered into the production of the crops will not make them liable for his debts. A husband who, in the enjoyment of the marital relation is permitted to live and be maintained upon the property of his wife, managed by her for her own use and benefit, does not acquire a title to the products merely by the labor which he voluntarily bestows upon it: Phillips v. Hall, 160 Pa. 60, and cases there cited. This is conceded by the defendant's counsel, but he argues that a married woman, in order to maintain title to the crops raised on a farm leased to her, must prove that the lease was made to her exclusively upon the credit of a separate estate which she owned at the time, and further, that she must establish the fact by a higher quality of proof than is required in ordinary civil issues. It would follow, that even if she did own a separate estate, yet if the lessor trusted partly to her honesty and her ability to manage the farm so as to earn the money to pay the rent, the crops would be subject to seizure for her husband's debts. The result of re-establishing the doctrine of the cases cited in support of this contention would be that a married woman not possessed of a separate estate, and so unfortunate as to have a thriftless and impecunious husband, would be practically helpless, no matter how capable and honest she might be. It would be useless for her to take a lease of a farm with the expectation of being able to earn enough to pay the rent, because the products of her labor and skill could be seized for the debts of her husband. However the law was before the passage of the Married Woman's Property Act, it is not so now. In a case arising under the act of 1872 the present chief jus-

tice said : " Known integrity and business qualifications coupled with the right to engage in business on her own account, with full control of her own earnings, secured to her under the act of 1872 ought to be and undoubtedly are recognized elements of substantial credit for any married woman:" Orr v. Bornstein, 124 Pa. 311. Hence it was held that where a married woman who had become entitled to her separate earnings borrowed money upon her personal credit, whether possessed of a separate estate or not, and therewith in good faith purchased a stock of goods with which to engage in business, the goods could not be seized and sold for the debts of her husband. So it was held after the passage of the act of June 3, 1887, that a married woman without separate estate might, for the purpose of engaging in business, purchase property wholly on credit and hold the same against her husband's creditors : Walter v. Jones, 148 Pa. 589. Again, in Wayne v. Lewis, 1 Mona. 305 ; s. c. 23 W. N. C. 441, the court was requested to charge that the crops raised on a farm leased to a married woman belonged to her husband, and were liable for his debts unless she proved that she leased the farm on the credit of a separate estate owned by her. The refusal so to charge was sustained by the Supreme Court. This ruling was put by the court below upon the correct ground that under the act of 1887, a married woman had a right to engage in business as if she were a feme sole, and that the proceeds of such business, whether profits or crops, were secure against the claim of her husband's creditors. It is scarcely necessary to say, that the act of 1893 did not restrict, but rather enlarged, the rights of married women conferred by the act of 1887. The general tendency has been to construe its provisions liberally, as undoubtedly they should be if the courts are to carry out the intention of the legislature. It follows from what we have said that if there is any error in the instructions recited in the several assignments, it is not one of which the defendants have a right to complain. The evidence is clear and uncontradicted that the plaintiff had a separate estate at the time she took the lease, if that was essential; that she managed the farm; that she bought the seed from which the crops were produced; that she hired the team used in working the farm; that she hired and paid the help, and apparently conducted the business for her own use and benefit. The fact that she expected to pay the rent from the

proceeds of her labor and skill, did not invalidate her title to them.

Judgment affirmed.