# Fritchey Lumber Company, Appellant, *v.* B. F. Isenberg Milling Company.

*Married women—Separate estate—Sheriff's interpleader.*

On a sheriff's interpleader to determine the title to property claimed by a wife and levied upon as the property of her husband, judgment should be entered on verdict for plaintiff where it appears that the wife was in a business started on a loan procured by the husband for the wife on his own note, that this loan was paid off before the levy, that the wife had no separate estate when she started the business, that her husband had no participation in the profits, and that the property levied upon was a part of the assets or profits of the business.

Argued Nov. 6, 1901. Appeal, No. 43, Oct. T., 1901, by plaintiff, from judgment of C. P. Huntingdon Co., Sept. T., 1900, No. 20, for defendant non obstante veredicto in case of Fritchey Lumber Company v. B. F. Isenberg Milling Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Sheriff's interpleader. Before BAILEY, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Samuel I. Spyker* and *R. W. Williamson*, with them *Wm. McK. Williamson*, for appellant.—The case was for the jury: Abell v. Chaffee, 154 Pa. 257; Adams v. Grey, 154 Pa. 258; Reed v. Stouffer, 14 Pa. C. C. Rep. 505; Campe v. Horne, 158 Pa. 508; Frost v. Knapp, 10 Pa. Superior Ct. 296; Hall v. Will, 18 Lanc. 117.

The wife unquestionably could borrow money from any one and undertake this business in her own name, on her own credit and without fraud, as if she were an unmarried person: Walter v. Jones, 148 Pa. 589.

*H. H. Waite*, for appellee.—Neither the acts of 1887 and 1893, either expressly or by implication gives to a married woman the right to engage in business with money furnished by her husband or obtained by his credit and thereby shield the property employed in such business or its product from the pursuit of the husband's creditors: Bollinger v. Gallagher, 144 Pa. 205; Gamber v. Gamber, 18 Pa. 366; Jack v. Kintz, 177 Pa. 571; Ensminger v. Hess, 192 Pa. 435; Quigley v. Swank, 11 Pa. Superior Ct. 602.

OPINION BY WILLIAM W. PORTER, J., February 14, 1902:

This appeal is from a judgment entered non obstante veredicto after trial of a sheriff's interpleader to determine the ownership of certain pine logs. The execution was issued upon a judgment against a partnership of which Frank Fritchey was a member. The plaintiff in the feigned issue is Linnie A. Fritchey (the wife of Frank Fritchey), trading as the Fritchey Lumber Company. The testimony of the plaintiff and of her husband was substantially that he (being at the time insolvent) borrowed for her from one, Stoler, the sum of $100. For this the husband gave his duebill, but turned over the money directly to his wife. She applied it to the first payment on account of a purchase by her of a tract of timber land. She employed her husband's brother, who acted for her in making the purchase and who subsequently worked for, and was paid by, her for working the timber into lumber. The moneys received for the timber went into the plaintiff's bank account. The debt to Stoler was paid by lumber delivered to the plaintiff's husband, who turned over to Stoler an order for moneys due

Fritchey from the Broad Top Railroad Company, by whom he was employed. Fritchey denies any participation in his wife's business, although it appears that he drew checks for her on her bank account, as did also her brother-in-law. The balance of the purchase money for the timber was paid out of the moneys realized from the sale of the lumber as was also, apparently, the rent of a sawmill leased by the plaintiff for use in the business. Thus it appeared that a married woman was engaged in a business; that the property levied on, the subject of this controversy, was a part of the assets or profit of that business; that the business was started on a loan procured by the husband for the wife; that this loan was paid off before the levy of the defendant was made; that the wife had no separate estate when she started the business except some household goods; and that her husband had no participation in the profits of the business. These do not purport to be all, but rather all the material, facts exhibited by the plaintiff. They were not contradicted by the defendant, save by proof of alleged declarations by the plaintiff's brother-in-law as to the ownership of the timber tract, and on the ground of inconsistent statements by the witnesses. The court below submitted to the jury two matters, namely, (1) whether the business of the Fritchey Lumber Company was actually the business of Mrs. Fritchey; and (2) whether the business of the company was carried on by Mrs. Fritchey collusively for the benefit of her husband and brother-in-law. The jury found for the plaintiff. The charge was adequate.

By the judgment entered non obstante, the court below in effect held that the facts required him to say, (1) that "all of the money which was put into the Fritchey Lumber Company was furnished by Frank Fritchey," which was at most a question for the jury on the testimony, and to add as a corollary, (2) that as between the plaintiff and her husband's creditors "the business must be regarded as his, and its property was therefore subject to seizure" on the execution of the defendant. No doubt there was sufficient in the case to send it to the jury on the question of fraud and collusion. The result reached in entering judgment non obstante is not sustainable. It was said nearly ten years ago (see Adams v. Grey, 154 Pa. 261) that it was then time that the profession throughout the com-

324 FRITCHEY LUMBER CO., Appellant, *v.* MILLING CO.

Opinion of the Court—Dissenting Opinion. [19 Pa. Superior Ct.

monwealth should understand and appreciate that both the rights and liabilities of married women in this state had been greatly changed and enlarged by the act of 1887. Under the act it had then been already held that a married woman without separate estate might, for the purpose of engaging in business, purchase property wholly on credit and hold the same against her husband's creditors: Walter v. Jones, 148 Pa. 589. Certainly this right was not curtailed by the act of 1893, which "did not restrict, but rather enlarged the rights of married women conferred by the act of 1887:" RICE, P. J., in Frost v. Knapp, 10 Pa. Superior Ct. 301. In the case last referred to, this court held that a married woman has the right to engage in business on her own account as if she were a feme sole, and the proceeds of such business are secure against her husband's creditors.

In the case before us the plaintiff had no separate estate. She and her husband testified that the money which started the business was borrowed for her by him; that he was not interested in the business; and that she in fact repaid the loan. These matters were at most only for the consideration of the jury in determining the question of fraud and collusion. The verdict may fairly be construed to mean that the business was actually that of the wife, and that there was neither fraud nor collusion. That the wife had no separate estate was not a factor in the case. Error was thus committed in overturning the verdict. The judgment non obstante veredicto is reversed, and judgment is now entered for the plaintiff upon the verdict for the sum of $225, the amount in court representing the goods claimed.

ORLADY, J., dissenting:

The judgment to be entered in this case is dependent upon the effect to be given to the testimony of the plaintiff's witnesses. The Fritchey Lumber Company had its origin in an investment of $100. The plaintiff's right to the property in dispute is conditioned upon the ownership of this money. The husband was admittedly insolvent with many unpaid exemption judgments of record against him. The wife testified that she had borrowed this money from her husband. The husband testified that he had no money, that he got the money for her

by borrowing it from a business friend to whom he gave a due-bill for the amount in his own name and that he afterwards paid the debt.   On cross-examination he testified as follows: " Q. Do you remember Mr. Spyker asking you this question, ' State whether or not, Mr. Fritchey, you loaned your wife $100, at any time' ?   A. I remember about it.   Q. Didn't you answer, ' Yes, sir; I did' ?   A. I did.   Q. Then you loaned it to your wife ?   A. No, sir; I borrowed the money for her.   That is the mistake, I could not loan her the money."

After the receipt of the money by the wife it was at once handed over to the husband's brother to use in binding an option for the timber on the James Dean tract of land.   The wife gave no obligation for the money and it was repaid to the lender out of the first returns from the $100 investment.   The husband could not transact business in his own name and the money was secured by him to be used in a lumbering operation with which he was familiar by experience and in which he wished to continue and about which the wife knew nothing. It was wholly conducted by the husband and his brother without any books being kept of the business or any accounting made to the wife.   The original investment was not made from her separate earnings, as it was furnished by the husband, nor, on the credit of her separate estate, as she says that she did not have any, nor, on the faith of her anticipated relations to a business with which she was not to be associated or identified.   The trading name was suggested by the husband and did not disclose her connection with it; its use tended rather to delude the creditors of the husband.

An insolvent debtor cannot secrete from the grasp of creditors the proceeds of an investment of his own money by so palpable a device.   The law looks behind the form to seize the substance, and the repayment of the $100 to the husband's business friend did not change the character.   To my mind the $100, when it was invested in the name of the wife, was the money of the husband and it would have been liable to attachment for his debts while in her hands.

However well intentioned the project may have been, and we do not question this, the law stamps it as unlawful, and as such it should have been declared by the court trying the feigned issue in answer to the defendant's third request for instructions.

It is a familiar and well settled principle that in such a con-test concerning the ownership of property which the wife claims to have purchased during coverture that she must " prove distinctly that she paid for it with funds which were not furnished by her husband," and this rule is not in any degree affected by the Act of June 3, 1887, P. L. 332, or by the Act of June 8, 1893, P. L. 344: Jack v. Kintz, 177 Pa. 541, and cases therein cited.   Nor have they changed the rule as to the measure of proof: Shober v. Harrison, 3 Pa. Superior Ct. 189.

" We have said in many cases that the evidence must be clear and satisfactory—clear and full proof—clear and un-equivocal—it must exclude reasonable suspicion that the property was the husband's.   These are but forms of expression to denote that the property of a husband is not to be covered up or withheld from creditors upon equivocal, suspicious, or doubtful evidence of a wife's right to it.   The family relation is such, and the probabilities of ownership so great on the part of the husband, that a plain and satisfactory case should be made out before the wife can be permitted to hold property against honest creditors: Earl v. Champion, 65, Pa. 191.   The proof for this purpose (to show the wife's title as against her husband's creditors) must be clear and satisfactory: Duncan v. Sherman, 121 Pa. 520;" Taylor v. Paul, 6 Pa. Superior Ct. 496.

I would affirm the judgment.

W. D. PORTER, J., concurs in this dissenting opinion.